The next case this morning is number 519, Bureau 279, Burdess et al. v. Continental Indemnity Company. Arguing for the appellant, Continental Indemnity, is Mr. Jeffrey Cowell. Arguing for the appellees, Gregory and Lisa Burdess, is Mr. Roy Drips. Each side will have up to 20 minutes for their argument. The appellant will also have five minutes for rebuttal. You'll see the digital time-keeping device on my screen. When time has expired, I'll bang the gavel. Finally, please remember no photographs and only the clerk of the court is permitted to record these proceedings today. Councilor, are you ready to proceed? Yes, Your Honor. Go ahead. May it please the court, in this consolidated appeal of two contempt orders, we're asking you to conclude two things. First, that as an intervener under Section 5 of the same obligations as a party to respond to 213 and 214 discovery requests, and as such, the trial court should not have ordered Continental to respond to those discovery requests. The second issue pertains to the trial court's exercise of discretion with regard to the motion to quash, and we would ask for this court to conclude that it was improper and an abuse of discretion for the trial court to require Continental to review over 3,300 worker compensation claim files, determine which of those claims involve persons falling off the trailers, and culling and producing specific workers' compensation claim injury information for those non-party employees. Turning back to the first issue on appeal, this involves a legal question of whether an intervener under Section 5B of the Workers' Compensation Act is to be treated as a party for purposes of discovery, and we would submit to the answer that is no, and that the March and May 2019 discovery orders are improper. Now, a couple cases that we referred to in our briefs, one is Powell v. Gudgell. The court there specifically held that an intervener is not a party. An intervener is someone who is merely allowed to join an action in order to assert or protect an interest that may be affected by the court. In Klein v. Hastings, the court used the Workers' Compensation Act as an example to say when there's a specific statutory right to intervene in a case, you look to that statute for the limitations on whatever role that that entity can have as an intervener. Section 2-408 is how you determine the scope of that intervention. And here, Section 5B specifically limits the involvement of an employer as an intervener. Section 5B states the employer may at any time thereafter join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection. Nothing more. Nothing in Section 5B says that the intervener gets to participate as a party, gets to participate in discovery, and gets to participate at trial. And we pointed out a number of cases over the last 60 years in which the court has, the appellate courts have said that as an intervener under Workers' Compensation Act, you're not a party. You only get to participate as a party if the plaintiff consents. Under Section 5B, you have a very limited role, and it is not extended just because plaintiff has issued discovery to you. And in this case, we have never sought to participate as a party. The petition we filed specifically asked the court to allow us to receive notice of all future proceedings and to make sure that any orders of the court would protect our lien. There was nothing in our petition and nothing in the resulting order that said that our role was beyond that. Now, because Continental is not a party, the discovery tools of Rule 213 and 214 are not the proper mechanisms for obtaining information from Continental. Rule 213 specifically refers to the issuance of interrogatories from one party to another party. 214 talks about the issuance of requests for production of documents from one party to another party. 214E specifically says that 214 does not for production of documents, indicating that the Illinois Supreme Court did not view non parties as being subject to discovery under 213 and 214. On this basis, because our role was very limited by statute and because the role did not include participation as a party, it was improper for the trial court to require Continental to comply with the discovery request. And accordingly, we did not require the trial court with regard to the contempt order and the two underlying discovery orders. Now, on the second issue, this pertains to the scope of the discovery, not so much the mechanism. The first issue basically said, Burtis, you have not gone after us through the right method, through a subpoena. Well, they did. But the problem is the subpoena sought some documents that were way out of line, way improper for them to go after. We're talking about the balance under rule 201 with regard to what is relevant and what is disproportionate or burdensome for a party to produce. Counsel, did your client make relevance and or privilege objections prior to the entry of the first appeal? The only objection to relevance was with regard to the control group information with regard to the burden of production. The I believe the objections were that it was overly broad and unduly burdensome. Um, the point is, with regard to those discovery responses, um, it's not so much a matter of objecting to the substance. It's a matter of objecting to the process requiring us to respond to discovery in the first place is what made that improper, not necessarily the extent to which discovery was sought there. So except for the second issue, the second issue. Now we've got the right way to come after us for the discovery or for the information, which is a subpoena. And we did object to relevance. We did object to the portionality of, uh, what's at issue here, which is the 3300 plus worker compensation file or claim information. Um, and it wasn't until the November hearing that plaintiff finally articulated what made this relevant, even though we objected to the basis of the relevance. And the objection was council was concerned that auto handlers, a defendant had not produced every bit of claim information to them because they had learned in another case involving a different insurance carrier that not all the same information had been produced by auto handlers. So that was the basis upon which they sought this information from us. It had nothing to do with with continental withholding documentation. There had been no assertion that J. J. C. T. Uh, Jack Cooper Transportation had not produced the information. That was the relevance issue for the why these 3300 plus, uh, files were important to the plaintiff. Now, against this, you have to to to balance the disproportionality. What is the burden on continental to produce this? And again, we look at the Carlson case where the court the court said, Hey, you gotta also kind of taken into consideration. You're dealing with a non party here, a third party here, and continental is not a party to the substantive litigated issue going on between the vertices and auto handlers. Um, more importantly, the records being sought were about injuries to non party employees. Basically, how did you get injured? What was injured? That's the information that's being sought here. Now, contrary to what's been said by plaintiffs in this case, pulling out all of this information from 3300 plus documents was not a task that was ever done before. Initially, Continental identified all 3300 plus claims. We provided that list of them in response to the discovery. Um, nothing indicates that Continental reviewed those those claims to determine which of them involved employees falling off of trailers. Now, in conjunction with the proceedings on the motion to quash, we of Continental, who stated that what plaintiff is seeking is not kept on a computer system and that it would cost $28,000 just to pull the files, pull out specific information. And because there there's the potential that privilege information would be produced, it would cost about $200,000 to reduce it down to exactly what was ordered to be be produced by the court. Now, our problem here is the proportionality of this. The burden on Continental is huge. It's over $200,000 to do what the court is asking us to do. Meanwhile, the benefit to the plaintiff is, well, there might be some additional records showing that auto handlers knew about this problem with the trailer. This is a problem that is set out in plaintiff's complaint. And this is a problem that plaintiff has with auto handlers. Why you would go after this information from a worker's compensation is is ridiculous. And I think this is a perfect case to demonstrate when you can have an abusive discretion by trying to mine from workers compensation records that are not kept on a computer specific information related to a very small issue. And on that basis, it was an abuse of the trial course discretion to order Continental to respond to to that part of the subpoena. Everything else. Yes, the figures that I guess your client testified to or had an affidavit to certainly seem seem high. I mean, they're high figures. But were those figures ever challenged by the other party? No, no evidence. Contra is contradicting what Mr Silver said is in the record. The only thing is plaintiff stated, and it's in the the, uh, stand buyers report. Uh, plaintiff's counsel stated that he would not agree to what he he said. But nothing's ever been submitted to the trial court, indicating that those numbers are way out of line, that it should only take X amount of dollars or X amount of time. So the only evidence before the trial court on the expense to be incurred in doing this is what's contained in Mr Silver's affidavit. So based on the lack of relevancy in the disproportionality of the benefit of producing these records again, it was an abusive discretion for the trial court to to order Continental to produce or to go through those 3300 records, identify specific claim and injury information, extract and log all of the privileged information and produce that to plaintiff. And so based upon those two conclusions that we're asking this court to find, we'd ask that you reverse the June 20 contempt order, reverse the May 14 order granting the motion for sanctions, reverse the May 11 or granting emotion compel and reverse the December 17 order of contempt on the motion to quash. Thank you. Thank you, Council. That's Earth. Yeah, belly. Thank you, Presiding Justice Welch. May it please the court. I'm Roy drips, and I'm here with my partner, Michael Bloat Vogel on behalf of the Appalachians Burdess. This case presents the simple issue of how long courts will tolerate the flouting of discovery requests authorized by the Supreme Court rules and sought to be enforced by orders of the circuit court. How long will courts allow anyone to keep moving the goalposts by interposing repeated untimely objections each time a request is ordered to be enforced and the objections that have been made are overruled? I asked this court to answer that question with a resounding today. This stops today. I want to go through just briefly the chronology in this case because it's important. Continental sought to intervene in July of 2018. It filed a motion asking for the court to authorize it to come into the case. It did not file a notice. It recognized the court's authority to manage the litigation when it filed the notice, and it asked the court to order the parties who were already in the future proceedings to Continental. This is a far cry from intervening simply to protect its lien, and I would also note that the workers' compensation lien is automatic. There's no need for Continental to intervene to enforce its lien. We have to pay it. On October 4, 2018, plaintiffs served the initial discovery requests on Continental. Three and a half months later, January 14, 2019, Continental served its responses. Its sole objection to every interrogatory and request for production was that it was not subject to discovery because it was merely an intervener. Continental suggested that the proper way to serve the discovery was through a subpoena and told the court, we're always subject to the subpoena power. Continental did not suggest that any of the discovery was improper. There was no privilege objection. There was no privacy objection. There was no proportionality or burdensome objection. There was no insurance privilege objection, and at the core of Continental's argument to this of delivering the same discovery request, that somehow revives Continental's opportunity to object to the substance of the request after it has already had that opportunity and the court has already ordered production. It's just misplaced. All plaintiffs did was take the same discovery request that had been served pursuant to Rule 214 and put them into a subpoena with a deposition writer. That does not revive their opportunity, and I would suggest that the trial court cannot be held to have abused its discretion in determining that that did not revive Continental's opportunity to object to those discovery requests after the court had already ruled on the same ones. Now, on March 11, 2019, and our brief does incorrectly misdate this as March 25, but the court's order was March 11, 2019. Continental's objections were overruled, and Continental was ordered to fully answer the discovery by March 25, 2019. On that date, March 25, 2019, Continental did not fully answer the discovery. It reasserted the same objections that had already been overruled. Again, it didn't add privilege arguments. It didn't add proportionality. It didn't say these were overbroad. It didn't say they were relevant. So plaintiff moved for sanctions, and Continental responded to the motion for sanctions, and it acknowledged that it did not initially produce the claim listing, but it stated, and this is in the record at C3512, the gathering of this information was labor-intensive and necessarily took time as it required a manual review of each of Jack Cooper Transport Company's hundreds of claimed files. Okay, so now that is way back in May of 2019. Continental now wants this court to bootstrap the work it already did going through all those files and say, well, we should have, back then, looked at falls from upper deck and at the ladder. We didn't do that, and so now going through all those again is going to cost $200,000. The circuit court was within its discretion in refusing to accept that number because they had already told them we had gone through the files, and they had no explanation for why they did not, when they went through the files the first time, why they did not get the information that plaintiff had requested. Having conducted the review, they cannot now argue that doing so was burdensome. They just didn't do it the right way, but I would respectfully submit that is on Continental, that is not on the circuit court, and it is not on plaintiffs. At that hearing, May 14, 2019, Continental's counsel stated he had already reviewed all claims made with respect to Jack Cooper, and he said, and I'm quoting, it was an onerous undertaking. It was a manual undertaking going through hundreds of claims files, but we put it together for him. Now that we have this list put together to somehow electronically search and determine whether we can identify whether these are upper deck falls from Jack, we the time to have looked into it was before the hearing and before the court ordered them to produce it. If they couldn't do it, they should have come in and said, hey, we cannot retrieve that information from these documents. Instead, they wait over six months, and then when there's another hearing after the subpoena is issued, they say, oh, it's gonna cost all this money, and respectfully, I would suggest that what they should have done is said, look, we've already done the work going through this and putting them into some electronic form, which they said in May. They didn't ever subtract out that work from the $200,000 and explain why that work didn't contribute to what they were saying they needed to do next. It just doesn't make sense, and the circuit court was not required to take at face value their affidavit when their own counsel is telling them something different six months before. Without identifying whether the injuries occurred from falls from upper deck or ladders, Continental's response is actually worse than a document dump because the needle isn't even in the haystack. Plaintiff cannot take what they've given us and pull out the information ourselves. It's just not there. They were ordered to do it back in March of 2019. The trial court entered an order of sanctions on May 14, 2019 for the violation of its previous order. Nothing that was raised at the time remotely justifies Continental in not obeying that March 2019 order, and it wasn't until a month after the trial that Continental asked for a finding of friendly contempt. And the problem with that is, under this court's decision in the Williford versus Toys R Us case, you can't wait a month and call it friendly contempt. You're in actual contempt at that point. You need to do this expeditiously. You need to do it right away, and the circuit court could find within its discretion that they had waited too long. But the circuit court was actually restrained in this case and did find them in a friendly contempt. Didn't put $1,000 a day or $10,000 a day on them, find them a dollar a day under the contempt so that this court could review the matter. Now, when we did file the subpoena, when we did serve that, Continental simply said they needed until November 15 in which to identify, redact, and log all the information it considers to be privileged or otherwise nondiscoverable. These were objections that could have been made back in January. The discovery requests were identical, and the trial court could easily have found within its discretion that those objections should have been made way back in January when they were objecting to being treated subject to discovery under the Supreme Court rules. Now, the court actually adjourned the November 26, 2019 hearing after asking counsel for Continental how much time and what kind of effort would be needed to gather the information regarding other files, and counsel for Continental attempted to reach a representative by telephone and was told that that representative was not available. The court didn't put down the hammer at that time. The court adjourned the hearing and reset it for December 9, 2019 for a report from counsel for Continental regarding the burden associated with producing the information. On December 9, 2019, counsel for Continental stated, and this is in our supplemental record, supplemental record 2 at C216, C216 of the second supplemental volume, Continental's counsel was unsure if the injury records were contained or accessible on a computer. Okay, we already know that in May, they said they had done this work, that it was electronically searchable. Now, they're saying they don't know. This is important because it undercuts the affidavit that was filed about cost. If the affidavit is saying we're going to have to start from square one and go through all of these records again, and the judge is aware that they've already done this, it's electronically searchable, and they can't say if that's really something they could do or not, the judge is going to have to look at the affidavit. Now, significantly, the trial court found that medical records of other injured persons and claim notes of other injured persons had not been requested by plaintiffs and, therefore, did not need to be produced. So, the privacy and privilege arguments were addressed by the trial court, and the court determined that those, that information did not need to be produced. The court gave Continental every opportunity, even adjourning the hearing and then reconvening, every opportunity to articulate a proportionality argument, and Continental failed to do so. Now, I want to talk just a little bit about the underlying order and the sanctions orders. Significantly, the circuit court refused to sanction Continental in the first order on March 25, 2019. This is not a case in which a trial judge goes off the rails and starts ordering sanctions at the drop of a hat. They objected, the objection was overruled, they were ordered to comply, then they come right back with the same objection that has already been overruled. This pattern continued. They keep moving the overruled, they're ordered to comply, they come back either with the same objection or, later on in the fall, with new objections that could have been raised but never were. Eventually, the trial court ordered sanctions when they came back in and just raised the same objection all over again. Now, it also shows why sanctions are necessary to vindicate the authority of the court. In this case, the circuit court overruled the only objections that were made and ordered compliance. Continental did not seek a finding of friendly contempt until June 20, 2019. Under Williford, that means it's too late and that delay is fatal to Continental's position. I want to talk just a little bit about the Continental voluntarily intervened in the case. They were not brought in by plaintiff and they did not have to come in in order to enforce their lien. It's statutory, it's automatic, we have to obey it and honor it. Continental acknowledged the power of the court over it by filing a motion for leave to intervene and not simply serving a notice. It voluntarily joined and the workers' compensation statute uses the word join. By voluntarily joining the lawsuit, the intervener subjects itself to the orders of the court. This principle makes sense because otherwise an intervener could disrupt proceedings in the trial court and cause delay or otherwise interfere with orderly proceedings. And that principle is embodied and protected by the plain language and purpose of section 2-408F of the Code of Civil Procedure. That section bolsters this conclusion by saying, quote, the applicant shall not interfere with control of the litigation as justice and the avoidance of undue delay may require. Now implicit in avoidance of undue delay would be subjecting them to the discovery rules rather than forcing them to go through the subpoena process. But Continental's repeated defiance of court orders and serial objections has interfered with control of the litigation. Continental has done exactly what the statute was intended to guard against. After almost two years of wrangling about discovery with none of the documents and information requested actually produced, Continental never explains how the statute limits in any way the effect of, quote, joining in the action, unquote, or immunizes the intervener from the discovery process. And of course the plain language of the statute contains no limitation on joining in the action. Continental inexplicably cites the Sjoberg case, S-J-O-B-E-R-G, which acknowledged that the employer would be added as a party. None of their cases stand for the proposition that an intervener is insulated from discovery, much less can thumb its nose at the court and refuse to obey court orders. The trial court was not obligated to consider late objections to discovery requests that could have been made months and months earlier. Now one thing I'd also want to note is that they never raised their relevance argument in the And if this court chooses to entertain the argument, I would just suggest that Supreme Court Rule 201-B forecloses their position. 201-B authorizes discovery whether it relates to the claim or defense of the party seeking disclosure. Rule 201 is also not limited to parties, doesn't limit it to I want to hear again on the proportionality argument. You've got this affidavit. It talks about the expense to comply. So it's my understanding that was not challenged in court, but is it your argument that basically the trial court rejected the affidavit, the validity, the expense that was stated in the affidavit based upon the court's own observations in dealing with the parties throughout this litigation? Justice Overstreet, I would answer that by saying that the affidavit conflicted with the representations of counsel at the prior hearing, and the court was entitled to rely on counsel's representations, that counsel had gone through these documents, and that it was an onerous process, and that they were now electronic, and he thought they could be searched. Now, having done that, having said that, it represented that there had already been this search done. The affidavit doesn't address how much of the search was already done, and how much still needed to be done. The $200,000 did not say, and we've done 150,000 of this work, okay? And I think the judge was concluding that the affidavit didn't really address the representations of counsel. Okay, I hope that answers your question. Thank you. Continental has clearly tried to thwart plaintiff from establishing the foundation for admissibility of similar injuries. Objection after objection is raised only after the court has ordered compliance, and this court's decision in the Zagorski case cautions that discovery is not supposed to be conducted like this. Discovery is not a tactical game. In the end, this case involves plaintiffs having to spend almost two years trying to obtain discoverable information from an entity that inserted itself in the lawsuit, but has continually come up with evolving reasons why it will not produce the information. Continental's only interest has been in dragging this out as long as possible, and I ask the court to put a stop to this now by affirming the orders of the circuit court. Thank you. Thank you, counsel. Rebuttal? Can you turn your mic on, please? We can't hear you. You're on, you're on mute, counsel. All right, I'm good now. Counsel talked about a chronology, and it's important to remember that Continental responded to the initial request for production of documents and interrogatories by objecting to every single one in January 2019 by asserting this is not the proper process. We are an intervener. We're not subject to this type of discovery. But at the same time, Continental said, Look, if you're to subpoena us, we'd give you this comp file. We'd give you this payment register. So they did. Uh, plaintiff's counsel wasn't happy with that, so they filed a motion to compel, and the court said, Well, you're gonna have to fully answer this by March 25. And so Continental took its document production, fashioned answers to interrogatories in response to request production of documents and referenced all of the documents that it had produced so far, which were responsive to 45 of 48 requests for production and answered all of the interrogatories except one. And that is who is the control group of Continental, which has absolutely nothing to do with the substantive issues in this case. Now, plaintiff's counsel today is trying to blur the line between what we said in response to the discovery request versus what we said in response to the subpoena and keeps missing the fact that the discovery request requests were improper from the very beginning. That's why we appealed it, because as an intervener, no court has ever held that we are to respond to 2 13 and to 14 discoveries, and we gave them the road map saying issue a subpoena. So we didn't waive anything by finally responding to the substance of these requests in response to the request in response to the subpoena. Now, one thing Council has stated, which is clearly wrong. Council states that at the May 14 hearing, uh, Council for Continental stated that all of the searchable. Council stated that he could produce records on a C D. That assumes that they can actually be called down to what needs to be done. Um, now it's interesting that Council never raised the search ability issue before the trial court at the hearings on the motion to quash when presented with the affidavit of Jeff Silver that said these documents are not kept on a Um, and there's even a reference to request number 42, which deals with they wanted a print out of all claims for all injuries, all summaries of injuries or Jack Cooper transport worker compensation claims. And the court says, Well, you either produce the print out or you produce the person who can testify that there's no such print out, which tends to show that the trial court never bought that these records were searchable in the first places plaintiff would want you to believe. Today we have the uncontradicted testing or evidence from Jeff Silver's affidavit that these were not searchable. Now, one last point with regard to the relevancy where you're balancing the disproportionality with the relevancy on the motion to quash. Council says that all of these little worker compensation claim snippets and injury reports are necessary for the foundation of the for the admissibility of similar injuries. It would appear that the best evidence of getting in similar injuries is testimony from somebody from Jack Cooper, not from a third parties summary of an injury to the extent that exists in a workers compensation file. The assertion of how this is relevant is is mind boggling, and it does not warrant the disproportionate impact this has on Continental. And again, these are two appeals because there's two issues. One is the first set of discovery orders up through May were not proper because it was not the proper procedure to subject us to discovery. And again, the sanctions, unlike the Williford case, the sanctions weren't going to go into they weren't in effect before we asked for friendly contempt. And that's a key point there, too. And then the second issue is once you've got the right procedure, here's substantively what's wrong with what you're asking for. And we would ask this court again to respond to the two questions I posed initially and hold that it was improper for the trial court to rule the way it did. Thank you. Thank you, Council. Case will be taken under advisement. You're excused. Thank you.